UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CAROLYN BRINDELL, JOHN          *       CIVIL ACTION
BRINDELL III, CONNIE DUPAY      *
AND CHRISTOPHER BRINDELL,       *       NO. _____
EACH INDIVIDUALLY AND ON        *
BEHALF OF DECEDENT JOHN         *       SECTION "   "
BRINDELL JR.                    *
                                *       JUDGE:
VS.                             *
                                *       MAG. JUDGE:
CARLISLE INDUSTRIAL BRAKE       *
AND FRICTION, INC., PORT OF NEW *
ORLEANS, LLC, EAGLE, INC.,      *
EATON CORP., GREAT DANE LLC,    *
HONEYWELL INTERNATIONAL,        *
INC., KELSEY-HAYES CO., LUFKIN  *
INDUSTRIES, INC., MERITOR, INC. *
PNEUMO-ABEX CORP., STRICK       *
TRAILERS, LLC, TAYLOR-          *
SEIDENBACH, INC., UTILITY       *
TRAILER MANUFACTURING CO.,      *
WILSON TRAILER CO., FIRST       *
STATE INSURANCE CO., and UNITED *
STATES FIDELITY AND GUARANTY    *
CO.                             *
                                *
                                *
                                *
* * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF REMOVAL

Defendants, Eaton Corporation, Carlisle Industrial Brakes & Friction, Inc., Utility Trailer

Manufacturing Co., Pneumo Abex, LLC, Strick Trailers, LLC, CRA Trailers, Inc., f/k/a Great

Dane Trailers, Inc., and Great Dane Trailers, LLC, (hereinafter "Defendants"), hereby give notice

1

of the removal of this case from the Civil District Court for the Parish of Orleans (Civil Action No. 2019-09716, Sec. 8, Div. "N"), State of Louisiana, to the United States District Court for the Eastern District of Louisiana, on the following grounds:

## Introduction

1.

Defendants base this removal on diversity jurisdiction per 28 U.S.C. §§ 1332 and 1441, *et seq.* This Court has subject matter jurisdiction per 28 U.S.C. § 1332.[1] Removal is proper per 28 U.S.C. §§ 1332 and 1441.[2]

2.

Venue is proper in the United States District Court for the Eastern District of Louisiana because the Civil District Court for the Parish of Orleans, State of Louisiana, is within the Eastern District of Louisiana.[3]

3.

Plaintiffs, Carolyn Brindell, John Brindell, III, Connie Dupay, and Christopher Brindell, each individually and on behalf of Decedent, John Brindell, Jr., filed a Petition for Damages against these Defendants and others on September 17, 2019, in the proceeding entitled *Carolyn Brindell, et al. v. Carlisle Industrial Brake and Friction, Inc., et al.,* bearing Civil Action No. 019-

---

[1] (West 2020).

[2] (West 2020).

[3] *Id.*

09716, Civil District Court for the Parish of Orleans, State of Louisiana.[4]  Plaintiffs allege that Decedent, John Brindell, Jr., was exposed to asbestos resulting from work as a mechanic while employed by Puerto Rico Marine Management ("PRMM") from approximately 1970 though 1984 at the Port of New Orleans.[5]

4.

Plaintiffs' Petition for Damages, as amended, named nineteen (19) Defendants, including four non-diverse Defendants: (1) Port of Orleans, LLC, (2) Eagle, Inc. (and its insurers, First State Insurance Company and United States Fidelity and Guaranty Company), (3) Taylor-Seidenbach, Inc., and (4) The Board of Commissioners for the Port of New Orleans.[6]  Thus, this matter was not removable at the time of filing of Plaintiffs' Petition for Damages or at the time of filing of Plaintiffs' First Supplemental and Amending Petition for Damages.

5.

Eagle, Inc. and Taylor-Seidenbach, Inc., both of which are typically joined as defendants in asbestos cases as so-called "venue defendants," were joined in this matter as "Supplier/Manufacturer/Seller/Contractor/Distributor/Product Defendants."[7]

---

[4] Petition for Damages, attached as Exh. A.

[5] *Id.* at ¶¶ 7 – 8.

[6] *Id.* at ¶¶ 2A(1), 2B(3), 2B(12); Plaintiffs' First Supplemental and Amending Petition, ¶ I(17), attached as Exh. B.

[7] Petition for Damages, ¶¶ 2B(3) & 2B(12), attached as Exh. A.

6.

The Port of New Orleans, LLC and the Board of Commissioners for The Port of New Orleans were both joined as "Premises Defendants."[8]

7.

Since the filing and amendment of Plaintiffs' Petition for Damages, Plaintiffs have voluntarily dismissed Honeywell International, Inc. (the citizenship of which is and has always been diverse from that of Plaintiffs), such that the citizenship of that entity is no longer relevant and has no bearing on this Court's jurisdiction.[9]

8.

Since the filing and amendment of Plaintiffs' Petition for Damages, Plaintiffs have voluntarily dismissed Meritor, Inc. (the citizenship of which has always been diverse from that of Plaintiffs), such that the citizenship of that entity is no longer relevant and has no bearing on this Court's jurisdiction.[10]

9.

Utility Trailer Manufacturing Co., with the consent of all properly joined defendants previously removed this action to the Eastern District of Louisiana.[11] After Plaintiffs filed a Motion

---

[8] *Id.* at ¶ 2A(1); Plaintiffs' First Supplemental and Amending Petition, ¶ I(17), attached as Exh. B.

[9] Motion and Order Dismissing Honeywell International, Inc., attached as Exh. C.

[10] Motion and Order Dismissing Meritor, Inc., attached as Exh. D.

[11] See Case No. 2:20-CV-01075, Rec. Doc. 1.

to Remand, and based upon an affidavit of Raymond Kain submitted in support thereof, the Court remanded the matter.[12] Defendants file the instant Removal on the same diversity grounds as the prior removal but with a change in circumstance; Defendants submit that the affidavit of Kain was procured and executed in bad faith in order to avoid a proper removal. Accordingly, this Removal is timely pursuant to Section 1446(c)(1).

**Taylor-Seidenbach Inc., Eagle Inc. (including Eagle's Insurers, First State Insurance Company and United States Fidelity and Guaranty Company), the Port of Orleans, LLC, and The Board of Commissioners for the Port of New Orleans are Improperly-Joined Defendants**

10.

This Court has jurisdiction over this matter because the four non-diverse defendants, Taylor-Seidenbach Inc., Eagle Inc. (and its insurers), the Port of Orleans, LLC, and the Board of Commissioners for the Port of New Orleans, are each improperly joined.

11.

In addition to joining Eagle Inc. as a defendant, Plaintiffs also joined Eagle Inc.'s alleged insurers, First State Insurance Company and United States Fidelity and Guaranty Company, as direct-action defendants.[13] Because Eagle, Inc. is improperly joined, it is axiomatic that its insurers are also improperly joined because there is no reasonable, as opposed to theoretical, possibility of Plaintiffs recovering against Eagle Inc.'s insurers given that there is no reasonable, as opposed to theoretical, possibility of Plaintiffs recovering against Eagle as the alleged insured.

---

[12] See Case No. 2:20-CV-01075, Rec. Doc. 24.

[13] Petition for Damages, ¶¶ 2C(15) & 2C(16), attached as Exh. A.

12.

Eagle, Inc. and Taylor-Seidenbach, Inc. are (and were at all times before and during the period of alleged exposure) sellers, distributors, and installers of thermal insulation and industrial gasket materials. Neither are (or have ever been) suppliers, manufacturers, sellers, or distributors of brakes or other friction materials of the type to which Decedent is alleged to have been exposed. At the time this case was filed, and subsequently amended, it was unknown whether Decedent's alleged exposures included exposures to the types of products sold by Eagle and Taylor-Seidenbach during Decedent's employment with PRMM. In fact, Plaintiffs' Petition alleges that Decedent was exposed to thermal insulation products during his employment with PRMM.[14] However, the deposition of a co-worker, Keith Poleto, which took place after the filing and amendment of Plaintiffs' Petition for Damages has established that Decedent was not and could not have been exposed to the types of products sold by Eagle and Taylor-Seidenbach, such that there is no reasonable possibility of Plaintiffs establishing the liability of, or recovering damages from, those defendants.[15]

---

[14] *Id.* at ¶¶ 7 & 9.

[15] Deposition of Keith Poleto, Vol. I, 122:21 – 123:20 ("Q. Other than the brake materials that you were asked about earlier, do you think you worked with any other materials at PRMMI that contained asbestos? A.   I don't think so."), attached as Exh. E; Deposition of Keith Poleto, Vol. II, 129:16 – 240:13 ("Q. Let me ask this:  When you were working in the shop where Mr. Brindell was your supervisor, was there any type of insulated pipes in that shop?  A. No.  Q. Okay.  Did you ever see any contractors come into the shop and do any type of work with insulation?  A. No.  Q. Okay.  And when I say insulation, do you know what I'm talking about?  A. Yeah, yeah.  Q. Okay.  What is insulation to you?  A. A layer of foam or something to keep the weather out or quiet the sound.  Q. Okay.  Were there any pipes running through the shop that had a protective covering on them to keep people from being burned or anything like that?  A. No.  Q. Okay.  And we're in South Louisiana, but how was that shop heated?  A. Had electric heaters that hung from the roof."), attached as Exh. F.

13.

Both the Port of Orleans, LLC and The Board of Commissioners for the Port of Orleans were improperly joined because (1) Plaintiffs have agreed to voluntarily dismiss both Port entities, demonstrating that Plaintiffs have no good faith intention to pursue their claims against those entities, and (2) there is no reasonable basis for predicting that Plaintiffs could recover against the Port entities even if they intended to pursue those claims.  Although the Port owned the premises at which Decedent worked, those premises were leased to PRMM and, as such, PRMM had custody and control of the subject premises at all times, precluding the Port's liability for Decedent's alleged exposures to asbestos.  Moreover, Mr. Poleto confirmed that the *only* potentially asbestos-containing materials to which Decedent may have been exposed on the premises were brake products purchased, used, and in the custody and control of PRMM.  Poleto specifically confirmed that there were no insulating materials on pipes or otherwise that may have contained asbestos to which Decedent may have been exposed.  As such, there is no reasonable basis for predicting that Plaintiffs may recover from the Port entities and those entities are improperly joined.

14.

Taylor-Seidenbach, Inc. and Eagle Inc. (as well as Eagle's alleged insurers, First State Insurance Company and United States Fidelity and Guaranty Company) are improperly-joined defendants because there exists "no reasonable basis for predicting" that Plaintiffs will recover

against these purported Defendant in state court.[16]  As the Supreme Court has recognized, improper joinder is established where Plaintiff has no good faith intention to pursue his claim against the non-diverse Defendant.[17]

15.

Here, there is no reasonable basis for predicting that Plaintiffs will be able to recover against Taylor Seidenbach, Inc., Eagle, Inc. (or its insurers), the Port of Orleans, LLC, or The Board of Commissioners for the Port of Orleans in state court.  More importantly, the record reflects that Plaintiffs have no good faith intention to pursue their claims against these non-diverse entities at trial.

15.

Plaintiffs cannot block removal "by joining nondiverse and/or in-state defendants who should not be parties."[18]  The only purpose for joining and/or not dismissing Taylor-Seidenbach, Inc. and Eagle, Inc. (as well as Eagle's insurers) was/is to frustrate or prevent Defendants from exercising their rights of removal and the availability of a federal forum for this dispute as guaranteed by federal law and the United States Constitution. (And, as addressed above, Plaintiffs'

---

[16] *Gray v. Beverly Enterprises-Mississippi, Inc*., 390 F.3d 400, 405 (5th Cir. 2004); *see also Mumphrey v. CVS Pharmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013).

[17] *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 98 (1921) (joinder was fraudulent where "it is apparent that the [non-diverse entity] was joined as a Defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal.").

[18] *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006).

lack of intent to pursue claims against the Port entities is clear because Plaintiffs have already agreed to dismiss those entities and, even had they not, there is no basis to predict Plaintiff has any reasonable possibility of recovering against the Port entities.)  Plaintiffs cannot present a single piece of evidence to establish even a colorable claim against Taylor-Seidenbach, Inc. or Eagle, Inc., much less a good faith intention to pursue claims against those entities.  Plaintiffs' examination of Mr. Poleto demonstrates Plaintiffs' lack of a good faith intention to pursue claims against either.  Thus, Plaintiffs cannot defeat removal. Accordingly, for purposes of removal, the citizenship of Taylor-Seidenbach, Inc., Eagle, Inc., and Eagle's alleged insurers, First State Insurance Company and United States Fidelity and Guaranty Company is properly disregarded.

16.

In support of the representation that Taylor-Seidenbach, Inc., Eagle, Inc., and Eagle's insurers have been improperly joined, Defendant shows with particularity:

a.  Plaintiffs' Petition, as amended, alleges Decedent's exposures took place at a *single* worksite, which is the Puerto Rico Marine Management facility in New Orleans, Louisiana;[19]

b.  Plaintiff located two co-workers of Decedent to provide testimony regarding Decedent's exposures while working at PRMM;[20]

c.  Plaintiff noticed the deposition of one of those co-workers, D.J. Lockhart, to take place

---

[19] Petition, ¶¶ 7 – 8, attached as Exh. A; First Supplemental and Amending Petition for Damages, ¶ II, attached as Exh. B.

[20] Jan. 28, 2020 and Jan. 30, 2020 E-mails from Plaintiffs' Counsel, attached as Exh. G (*in globo*).

on February 13, 2020 but unilaterally cancelled Mr. Lockhart's deposition by notice

provided to all counsel on February 12, 2020;[21]

d.   Plaintiff noticed the deposition of the second of those two co-workers, Keith Poleto, to

take place on February 19, 2020 and that deposition was completed on February 20,

2020;[22]

e.   During Plaintiffs' counsel's direct examination of Mr. Poleto, counsel did not even

attempt to elicit testimony that Decedent was exposed to asbestos from anything other

than friction products used in trailer brake systems;[23]

f.   During cross-examinations by defense counsel, Mr. Poleto testified that there were no

insulation products at the shop that could have resulted in asbestos exposure to

Decedent;[24]

---

[21] *Id.*; Feb. 12, 2020 E-mail from Plaintiffs' Counsel, attached as Exh. H.

[22] Deposition of Keith Poleto, Vol. I, attached as Exh. E; Deposition of Keith Poleto, Vol. II, attached as Exh. F.

[23] Deposition of Keith Poleto, Vol. I, 9:25 – 80:11, 204:13 – 208:8, attached as Exh. E.

[24] Deposition of Keith Poleto, Vol. I, 122:21 – 123:20 ("Q. Other than the brake materials that you were asked about earlier, do you think you worked with any other materials at PRMMI that contained asbestos? A.    I don't think so."), attached as Exh. E; Deposition of Keith Poleto, Vol. II, 129:16 – 240:13 ("Q. Let me ask this:  When you were working in the shop where Mr. Brindell was your supervisor, was there any type of insulated pipes in that shop?  A. No.  Q. Okay.  Did you ever see any contractors come into the shop and do any type of work with insulation?  A. No.  Q. Okay.  And when I say insulation, do you know what I'm talking about?  A. Yeah, yeah.  Q. Okay.  What is insulation to you?  A. A layer of foam or something to keep the weather out or quiet the sound.  Q. Okay.  Were there any pipes running through the shop that had a protective covering on them to keep people from being burned or anything like that?  A. No.  Q. Okay.  And we're in South Louisiana, but how was that shop heated?  A. Had electric heaters that hung from the roof."), attached as Exh. F.

g.  During cross-examination by defense counsel, Mr. Poleto testified that the only gasket material involved in his work were composed of cork;[25] and

h.  The <u>only</u> site of exposure alleged by Plaintiffs is the shop about which Mr. Poleto testified.[26]

i.  The clear absence of the presence of any asbestos-containing products of the type sold by Eagle, Inc. and Taylor-Seidenbach at the only worksite at which Plaintiffs claim Decedent was exposed to asbestos precludes there being any reasonable possibility of Plaintiffs recovering against either of those entities at the trial of this matter and the failure of Plaintiffs to even attempt to elicit testimony against either Eagle, Inc. or Taylor-Seidenbach, Inc. constitutes proof that Plaintiffs have no good faith intention of pursuing claims against either entity and have joined those non-diverse entities solely for the purpose of depriving this Honorable Court of jurisdiction over this matter.

17.

**The Affidavit of Kain was Procured in Bad Faith to Defeat Removal**

In support of the representation that Kain's affidavit[27], submitted in connection with

---

[25] Deposition of Keith Poleto, Vol. I, 123:1-16 ("Q. The maintenance work on these trailers, did any of that involve gaskets?  A. Acid?  Q. Gaskets.  A. Gaskets? Q. Gaskets.  A. No, there was a gasket on the liquid-filled hubs.  Some of the hubs had 90 weight oil in them, so for the bearings.  Q. These gaskets would have been some of the parts that were kept in the parts department?  A. Yeah.  Q. Do you know the brand name -- A. The gaskets seemed like they were made out of cork material."), attached as Exh. E.

[26] Petition, ¶¶ 7 – 8, attached as Exh. A; First Supplemental and Amending Petition for Damages, ¶ II, attached as Exh. B.

[27] As noted in the pleadings associated with Plaintiffs' prior Motion to Remand, Kain's affidavit was improperly executed, as it failed to conform to the requirements for remote notarization. Indeed, in addition

Plaintiffs' prior Motion to Remand, was confected and produced in bad faith solely to defeat an otherwise proper removal, Defendants show with particularity:

a. At the time of the Motion to Remand, Plaintiffs' Responses to Master Discovery, from December 2019, did not list Kain as a witness.[28] Indeed, Master Interrogatory No. 33 specifically inquired regarding work that involved tearing out insulation (or other asbestos containing materials) and Plaintiffs did not name Kain. Instead, as noted above, Plaintiffs noticed the depositions of two other coworkers, ultimately canceling one, and never asking about insulation.

b. Kain was first contacted around the time he executed his affidavit, in late April 2020, after this matter had been removed. At that time, Kain spoke with counsel for Plaintiffs.[29]

c. Plaintiffs' counsel prepared the affidavit, which was sent to Kain's daughter to be printed, and his daughter brought it to him to sign.[30] Kain did not draft the affidavit.

d. Kain's affidavit attests that while Kain and Brindell were on board ships, additional maintenance work was performed in their work areas.[31]

---

to failing to create an audio recording, Kain specifically testified that he never showed anyone a copy of his driver's license, meaning that his identity was not reasonably verified as required by Proclamation Number 41 JBE 2020 Section 5, Subpart C.

[28] Exhibit T, Plaintiffs' Responses to Master Discovery

[29] Exhibit U, Deposition of Kain, at p. 53:2-17, 54:6-11.

[30] Exhibit U, Deposition of Kain, at p. 216:4-22.

[31] Exhibit V, Kain Affidavit, para. 5.

e.  Kain's affidavit further attests that he and Brindell were present and exposed to asbestos from maintenance and insulation work performed by Eagle and Taylor Seidenbach.[32]

f.  Kain's affidavit further attests that he and Brindell saw airborne asbestos dust from the work of Eagle and Taylor Seidenbach.[33]

g.  Finally, Kain's affidavit attests that he was able to identify the maintenance and insulation workers by their trucks, uniforms, and equipment.[34]

h.  However, Kain gave a deposition on January 29, 2021, wherein he testified that he had no idea what work went on in the holds of the ship, and only ever saw the contractors repairing a railing, directly contradicting paragraph 5.[35]

i.  Kain further admitted that didn't even know what kind of company "Eagle" is and that he didn't really pay attention to the contractors that came out.[36] In fact, when Kain discussed the trucks that apparently pulled up, he stated that Eagle sounded familiar, and never mentioned Taylor-Seidenbach.[37]

---

[32] Exhibit V, Kain Affidavit, para. 6.

[33] Exhibit V, Kain Affidavit, para. 7.

[34] Exhibit V, Kain Affidavit, para. 8.

[35] Exhibit U, Deposition of Kain, at 79:7-80:4, 81:12-25.

[36] Exhibit U, Deposition of Kain at p. 80:12-81:11.

[37] Exhibit U, Deposition of Kain at p. 57:12-58:5 and generally.

**j.** Kain also admitted that he had no idea what asbestos was, and although he may have seen dust, he has no idea of the source of the dust.[38] Specifically, he could not swear under oath that the dust contained asbestos.[39] This directly contradicts paragraphs 6 and 7.

**k.** Kain specifically admitted that he never saw these companies doing insulation work.[40] The only work he saw was welding work on the deck, and he does not know what went on under the deck or in the engine room.[41] This directly contradicts paragraphs 7 and 8.

**l.** Kain also conceded that he had no personal knowledge that either Eagle or Taylor Seidenbach ever handled asbestos materials at Puerto Rico Marine, directly contradicting paragraphs 6 and 7.[42]

**m.** Although Plaintiffs propounded discovery to the friction defendants, they did not propound discovery upon either Eagle or Taylor-Seidenbach.[43]

---

[38] Exhibit U, Deposition of Kain at p. 83:2-84:4.

[39] Exhibit U, Deposition of Kain at p. 84:1-4.

[40] Exhibit U, Deposition of Kain at p. 84:5-17; 85:18-86:2.

[41] Exhibit U, Deposition of Kain at p. 88:20-89:7.

[42] Exhibit U, Deposition of Kain at p. 87:14-20.

[43] Exhibit W, email transmitting discovery to Carlisle, CRA (Great Dane), Eaton, Lufkin, Pneumo Abex, Utility Trailer, Wilson Trailer, and ZF Safety (Kelsey Hayes), with attachments, *en globo*.

**n.** Plaintiffs' experts do not attempt to establish liability against the non-diverse insulation defendants Taylor-Seidenbach or Eagle. Despite being provided with Kain's affidavit, neither James Millette nor Marty Kanarek include opinions as to insulation within their reports.[44] Kenneth Garza's report states that he needs more information regarding the insulation exposures at Puerto Rico Marine.[45] Dr. Brent Staggs was deposed on February 1, 2021, and conceded that he doesn't have sufficient information to opine that Eagle and Taylor-Seidenbach were substantial contributing causes of Brindell's mesothelioma.[46]

**o.** In another pending case in Orleans Parish, also involving alleged friction exposures, wherein the plaintiff is represented by the same two law firms, the trial court recently heard evidence and argument on exceptions of improper venue which urged that the plaintiff had improperly joined Taylor-Seidenbach in order to obtain venue in Orleans Parish. The trial court agreed that contrary to the plaintiff's assertions, venue was not proper in Orleans Parish, which is suggestive of a similar pattern of naming Orleans Parish parties in order to select a specific venue.[47]

---

[44] Exhibit X, Report of Millette, Exhibit Y, Report of Kanarek.

[45] Exhibit Z, Report of Garza

[46] Exhibit AA, Placeholder for Deposition of Dr. Staggs. As Dr. Staggs was deposed just a day ago, his deposition transcript is not yet available. However, upon receipt of same, Defendants will supplement this exhibit with the deposition transcript.

[47] Exhibit BB, Reasons for Judgment on Exceptions of Improper Venue, *Aaron v. Bancroft Bag, Inc.*; Orleans Parish, State of Louisiana, Docket No. 20-6964.

p.   The failure of Plaintiffs to actually pursue any case against Eagle and Taylor-Seidenbach until after removal, and the fact that Plaintiffs' experts do not attribute liability to Eagle or Taylor-Seidenbach each demonstrate that Plaintiffs do not reasonably believe that they can recover against either party. Additionally, the lack of foundation, and indeed direct contradiction by Kain's deposition testimony, of the Kain Affidavit, shows that the affidavit was procured in bad faith to defeat removal.

**Removal is Timely**

18.

The original removal was filed after receipt of the transcript of Mr. Poleto's deposition on March 2, 2020 and, per the United States Fifth Circuit Court of Appeal's decision in *Morgan v. Huntington Ingalls, Inc.,* the receipt of the transcript that constitutes "other paper" is the date from which the timeliness of removal is determined.[48]  This Notice of Removal is filed within 30 days of Defendants' receipt of "other paper" from which Defendant ascertained that this case is one that has become removable, per the requirements of 28 U.S.C. § 1446(b)(3); specifically, the transcript of Kain's January 29, 2021, deposition was received February 2, 2021. Further, although this renewed Removal is filed outside of one year of the commencement of this action on September 17, 2019, this delay is due specifically to the bad faith of Plaintiffs' counsel in submitting to the

---

[48] March 2, 2020 E-mails from Court Reporter to All Participating Counsel, attached as Exh. I (*in globo*); 879 F.3d 602, 612 (5th Cir. 2018) (In the context of when the 30-day clock for removal begins to run when deposition testimony constitutes "other paper," the Fifth Circuit held:  "We adopt a bright-line rule today: Section 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript.").

Court an unfounded "affidavit" in order to avoid removal. Pursuant to 28 U.S.C. § 1446(c), the actions taken in bad faith in order to prevent the removal by Defendants create an exception to the one year limitation. *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292 (5th Cir. 2019), as revised (Aug. 23, 2019)

19.

Removal of this action from state court to federal court is authorized by the diversity jurisdiction and removal statutes, 28 U.S.C. §§ 1332, 1441, *et seq.*[49]

20.

A defendant may remove an action on the basis of diversity of citizenship if there is complete diversity between the named plaintiffs and all properly-joined and served defendants and no defendant is a citizen of the forum state.[50]  Complete diversity exists when "the citizenship of each plaintiff is diverse from the citizenship of each defendant."[51]

**Diversity Jurisdiction is Satisfied and all Properly-Joined and Served
Defendants Consent to Removal**

21.

Plaintiffs, Carolyn Brindell, John Brindell, III, Connie Dupay, and Christopher Brindell, are each domiciliaries and citizens of the State of Louisiana.[52]  Accordingly, at the time this action

---

[49] (West 2020).

[50] *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005).

[51] *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 67-68 (1996).

[52] Petition for Damages, ¶¶ 1A – 1D, attached as Exh. A.

was commenced and at the time of filing of this Notice of Removal, Plaintiffs were and are citizens of Louisiana for purposes of diversity jurisdiction.

22.

For diversity purposes, a corporation is a citizen of the state where it was incorporated and the state where it maintains its principal place of business.[53]   For diversity purposes, a limited liability company is a citizen of the state(s) of its members.[54]

23.

The remaining properly-joined and served defendants are all corporations or limited liability companies and each defendant's citizenship is as follows:

(a) Carlisle Industrial Brake and Friction, Inc. is a Delaware Corporation with its principal place of business in Indiana;[55]

(b) Eaton Corporation is an Ohio corporation with its principal place of business in Ohio;[56]

(c) Great Dane LLC is a Delaware limited liability company.   Great Dane LLC has three members:

   (1) Trailer Investors LLC, an Illinois limited liability company with eighty-eight (88) members:

---

[53] 28 U.S.C. §1332(c)(l); *Lincoln Prop. Co.*, 546 U.S. at 88-89; *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988).

[54] *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, LLC,* 757 F.3d 481, 483 (5th Cir. 2014).

[55] Carlisle Industrial Brake and Friction, Inc.'s Consent to Removal, attached as Exh. J.

[56] Eaton Corporation's Consent to Removal, attached as Exh. K.

a. Thirty-four (34) of the members are trusts, the trustee of which is an individual who is a citizen of the State of Illinois;

b. Fifty-three (53) of the members are trusts, the trustee of which is Longview Trust Company LLC, a South Dakota limited liability company;

  *i.* The members of the Longview Trust Company LLC are one individual who is a citizen of the State of Arizona, two individuals who are citizens of the State of California, one individual who is a citizen of the State of Colorado, ten individuals who are citizens of the State of Illinois, two individuals who are citizens of the State of New York, and one individual who is a citizen of the State of Massachusetts;

c. One of the members is Two Point Zero LLC, a Delaware limited liability company with seventeen (17) members, which are trusts, the trustee of which is an individual who is a citizen of the State of Illinois

(2) Pines S LLC, a limited liability company with twenty-five (25) members:

a. One of the members is an individual, who is a citizen of the State of Illinois;

b. Twenty-four (24) of the members are trusts, the trustee of which is an individual who is a citizen of the State of Illinois;

(3) The third member of Great Dane LLC is HCNI I LLC, an Illinois limited liability company with thirty-seven (37) members:

a. Two of the members are individuals, each of whom is a citizen of the State of Illinois;

    b.   Thirty-four (34) of the members are trusts, the trustee of which is an individual who is a citizen of the State of Illinois;

    c.   One of the members is HCC Manager LLC, an Illinois limited liability company with three members, two of whom are individuals who are citizens of the State of Illinois and one of whom is an individual who is a citizen of the State of California:[57]

(d)  CRA Trailers, Inc. f/k/a Great Dane Trailers, Inc. is a Georgia corporation with its principal place of business in Georgia;[58]

(e)  ZF Active Safety US Inc. f/k/a Kelsey-Hayes Company is a Delaware corporation with its principal place of business in Michigan.  Prior to changing its name from Kelsey-Hayes Company to ZF Active Safety US Inc., Kelsey-Hayes Company was a Delaware corporation with its principal place of business in Michigan;[59]

(f)  Lufkin Industries LLC is a Texas limited liability company.  Its only member is Druck, LLC. The only member of Druck, LLC is Baker Hughes, a GE company, LLC, which is a Delaware limited liability company. The members of Baker Hughes, a GE company, LLC are: (1) GE Oil & Gas Holdings I, Inc., which is a Delaware corporation with its principal place of business in Ohio, (2) EHHC NewCo, LLC, which is a Delaware limited liability

---

[57] Great Dane LLC's Consent to Removal, attached as Exh. L.

[58] CRA Trailers, Inc.'s Consent to Removal, attached as Exh. M.

[59] ZF Active Safety US Inc. f/k/a Kelsey-Hayes Company's Consent to Removal, attached as Exh. N.

company whose only member is Baker Huges, a GE Company, LLC (the citizenship of which is described herein), (3) Baker Hughes Company, a Delaware corporation with its principal place of business in Texas, and (4) CFC Holdings LLC, a Delaware limited liability company whose only member is EHHC NewCo, LLC (the citizenship of which is described above).[60]

(g) Pneumo Abex, LLC (incorrectly named in Plaintiff's Petition for Damages as "Pneumo Abex Corporation") is a Delaware limited liability company whose sole member is the Pneumo Abex Asbestos Claims Settlement Trust, which is a Delaware statutory trust, and is an IRS qualified settlement fund.  For purposes of citizenship, the trustees of the Pneumo Abex Asbestos Claims Settlement Trust are residents of, and are domiciled in, Maryland, Pennsylvania, and Delaware. Pneumo Abex LLC is the beneficiary of the Pneumo Abex Asbestos Claims Settlement Trust.  No individual, or entity, has any form of beneficial ownership interest in the Pneumo Abex Asbestos Claims Settlement Trust.  The principal place of business for Pneumo Abex LLC is Spring, TX. The principal place of business for the Pneumo Abex Asbestos Claims Settlement Trust is Delaware.[61]

(h) Strick Trailers LLC is a Delaware limited liability company.  Its only member is Diamatrix, Inc., which is a Delaware corporation with its principle place of business in Pennsylvania.[62]

---

[60] Lufkin Industries, LLC's Consent to Removal, attached as Exh. O.

[61] Pneumo Abex, LLC's Consent to Removal, attached as Exh. P.

[62] Strick Trailers, LLC's Consent to Removal, attached as Exh. Q.

(i)  Utility Trailer Manufacturing Company is a California corporation with its principal place of business in California;[63]

(j)  Wilson Trailer Company is an Iowa corporation with its principal place of business in Iowa;[64] and

Each of these joined and served defendants has consented to the removal of this matter.[65]

24.

Union Carbide Corporation is a nominal party; Plaintiffs have agreed to dismiss the claims against Union Carbide Corporation as part of a settlement. As such, Union Carbide Corporation is no longer participating in this matter, and indeed did not appear at the recent deposition of Kain.[66] No properly-joined and served defendant in this matter is a citizen of the State of Louisiana.  Thus, complete diversity exists among the parties in accordance with 28 U.S.C. §§ 1332, 1441, *et seq.*

**The Requisite Amount in Controversy is Satisfied**

25.

Although Defendant denies liability, Defendant states that the amount in dispute clearly exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Where a

---

[63] Utility Trailer Manufacturing Company's Consent to Removal, attached as Exh. R.

[64] Wilson Trailer Company's Consent to Removal, attached as Exh. S.

[65] Consents to Removal, attached as Exhs. J through S.

[66] Even if Union Carbide Corporation were not merely a nominal defendant, there is no reasonable likelihood of recovery against it as no fact witness has identified Union Carbide Corporation, nor have any experts issued opinions as to Union Carbide.

Defendant can show, by a preponderance of the evidence, that the amount in controversy is greater than the jurisdictional amount, removal is proper.[67]  The Defendant can meet its burden if it is "facially apparent" from the face of the petition that the claims likely exceed $75,000.[68]

26.

In their Petition for Damages, Plaintiffs allege

Decedent, John Brindell, Jr. was diagnosed with malignant mesothelioma on or about May 15, 2019, which was caused by and a consequence of his exposure to asbestos as set forth herein. As a direct and proximate result of the delictual conduct of defendants, Decedent, John Brindell, Jr. contracted malignant mesothelioma and suffered physically, financially, mentally, and emotionally, before this painful asbestos-related disease ultimately caused his death on July 6, 2019.  Petitioners have suffered financially, mentally and emotionally in witnessing intimately the suffering of their husband and father, and loss of the love, affection, society, support and services of Decedent and all other damages due them pursuant to Louisiana Civil Code article 2315.2.[69]

27.

It is facially apparent from Plaintiffs' Petition for Damages that Plaintiffs' claims create an amount in controversy that exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Accordingly, the amount in controversy requirement is satisfied pursuant to 28 U.S.C. § 1332.

**Consent by Improperly-Joined Defendants is Not Required**

28.

---

[67] *See White v. FCI U.S.A., Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

[68] *See Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002).

[69] Petition, ¶ 3, attached as Exh. A

Consent to removal by the Port of Orleans, LLC, The Board of Commissioners for the Port of Orleans, Taylor-Seidenbach, Inc., Eagle, Inc., and Eagle's alleged insurers, First State Insurance Company and United States Fidelity and Guaranty Company, is not required, as the consent of improperly joined Defendants is not required for the removal of cases to federal court.[70]

29.

A copy of this Notice of Removal will be filed with the Clerk of Court of the Civil District Court for the Parish of Orleans, State of Louisiana. All parties will likewise receive a timely copy of this Notice of Removal.

**WHEREFORE,** Defendants pray that the above-entitled state court action, now pending in the Civil District Court for the Parish of Orleans, State of Louisiana, be accepted as removed to the United States District Court for the Eastern District of Louisiana.

[Signature Blocks on Following Page]

---

[70] *See Jernigan v. Ashland Oil, Inc.,* 989 F.2d 812 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 192 (1993).

Respectfully submitted:

**MG+M LAW FIRM**


___ /s/ *Meghan B. Senter* _____
Christopher O. Massenburg (LSBA No. 26989)
Jeanette S. Riggins (LSBA No. 27056)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax:    (504) 535-2886
Email:  AsbLitLA@mgmlaw.com

**ATTORNEYS FOR EATON CORPORATION**

**-and-**

FRILOT L.L.C.

 /s/ Magali A. Puente Martin _____
JOHN J. HAINKEL, III – 18246
ANGELA M. BOWLIN – 20714
MAGALI A. PUENTE MARTIN – 27279
KELSEY A. EAGAN – 35764
KELLY L. LONG – 34945
LACEY T. MCCOY – 37790
ROTH M. HAINKEL - 38765
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
T: (504) 599-8000; F: (504) 599-8100
*Counsel for Carlisle Industrial Brakes & Friction, Inc.*

**-and-**

25

**DEUTSCH KERRIGAN, L.L.P.**

  /s/ Amber B. Barlow
William C. Harrison    #  6616
Jennifer E. Adams      #26588
Barbara B. Ormsby      #27388
Amber B. Barlow        #34433
abarlow@deutschkerrigan.com
wharrison@deutschkerrigan.com
jadams@deutschkerrigan.com
bormsby@deutschkerrigan.com
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: 504 581 5141
Facsimile: 504 566 1201
**Attorneys for Defendant,**
**Pneumo Abex, LLC**

**-and-**

**PUGH,   ACCARDO,   HAAS,   RADECKER   &**
**CAREY, L.L.C.**

*/s/Joseph H. Hart, IV*
JOSEPH H. HART, IV, T.A. (#21434)
THOMAS A. PORTEOUS (#27039)
DANIEL E. OSER (#27027)
1100 Poydras Street, Suite 3300
New Orleans, Louisiana 70163
Telephone:  (504) 799-4500
Facsimile:   (504) 799-4520
Email:  jhart@pugh-law.com
        tporteous@pugh-law.com
        doser@pugh-law.com

*Attorneys Utility Trailer Manufacturing Company*

**-and-**

26

**FOLEY & MANSFIELD, PLLP**

*Kay Barnes Baxter*

Kay Barnes Baxter (LSBA No. 22938)
Jay R. Boltin (LSBA No. 29765)
Zackary A. Paal (LSBA No. 30009)
650 Poydras Street, Suite 2450
New Orleans, Louisiana 70130
Telephone: (504) 302-4800
Facsimile: (504) 208-3726
Kbaxter@foleymansfield.com
jboltin@foleymansfield.com
zpaal@foleymansfield.com
NO-Asbestos-all@foleymansfield.com

*Attorneys for Strick Trailers, LLC*

-and-

**MG+M LAW FIRM**

**/s/ Amanda L. Deto**
Christopher O. Massenburg (LSBA No. 26989)
Jeanette S. Riggins (LSBA No. 27056)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax:    (504) 535-2886
Email:  AsbLitLA@mgmlaw.com

**ATTORNEYS FOR CRA TRAILERS, INC.,
F/K/A GREAT DANE TRAILERS, INC.**

-and-

27

**MG+M LAW FIRM**

___/s/ Amanda L. Deto_____
Christopher O. Massenburg (LSBA No. 26989)
Jeanette S. Riggins (LSBA No. 27056)
B. Adam Hays (LSBA No. 30255)
Meghan B. Senter (LSBA No. 34088)
Amanda L. Deto (LSBA No. 38190)

One Canal Place
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130
Phone: (504) 535-2880
Fax:    (504) 535-2886
Email:  AsbLitLA@mgmlaw.com

**ATTORNEYS FOR GREAT DANE LLC**


**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I have on this 2nd day of February, 2021, served the foregoing

on all counsel of record via the Court's ECF/PACER system.

_____/s/ Meghan B. Senter_____