**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CAROLYN BRINDELL, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-216** |
| **CARLISLE INDUSTRIAL BRAKE AND FRICTION INC., et al.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

In this litigation, Plaintiffs Carolyn Brindell, John Brindell III, Connie Dupay, and Christopher Brindell (collectively, "Plaintiffs") allege that Decedent John Brindell, Jr. ("Decedent") was exposed to asbestos-containing products by several defendants in the above-captioned matter.[1] Before the Court is Plaintiffs' "Emergency Motion to Remand."[2] Defendants Eaton Corporation, Pneumo Abex, LLC, Utility Trailer Manufacturing Company, Strick Trailers, LLC, CRA Trailers, Inc., and Great Dane LLC (collectively, "Removing Defendants") oppose the motion to remand.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to remand.

## I. Background

From 1970 to 1984, Puerto Rico Marine Management ("PRMM") allegedly employed Decedent as a mechanic at the Port of New Orleans.[4] Plaintiffs allege that Utility Trailer

---

[1] Rec. Doc. 1-2 at 6.

[2] Rec. Doc. 5.

[3] Rec. Doc. 8.

[4] Rec. Doc. 1-2 at 6.

Manufacturing Company ("Utility"), Taylor-Seidenbach, Inc. ("Taylor"), Eagle Inc. ("Eagle"), and several other defendants in this case exposed Decedent to asbestos-containing products during Decedent's employment with PRMM.[5] Plaintiffs contend that exposure to asbestos causes irreparable lung damage, which may manifest itself via mesothelioma.[6] Plaintiffs note that Decedent was diagnosed with mesothelioma on May 15, 2019 and passed away on July 6, 2019.[7]

On September 17, 2019, Plaintiffs filed a petition in the Civil District Court for the Parish of Orleans against Removing Defendants, Utility, Taylor, Eagle, and Eagle's insurers—First State Insurance Company ("First State") and United States Fidelity and Guaranty Company ("Fidelity").[8] Plaintiffs bring negligence and strict liability claims against these defendants and several other defendant companies not pertinent for the instant motion.[9]

On April 1, 2020, Utility removed the case to this Court for the first time, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[10] In the notice of removal, Utility acknowledged that Plaintiffs and four defendants—Taylor, Eagle, First State, and Fidelity—were Louisiana citizens for diversity purposes.[11] Nevertheless, Utility asserted that each non-diverse defendant's

---

[5] *Id.* at 5. The following additional companies are listed as defendants in this matter: Carlisle Industrial Brake and Friction, Inc.; CRA Trailers Inc., Eaton Corporation; Great Dane LLC; Lufkin Industries, LLC; Pneumo Abex, LLC; Strick Trailers, LLC; the Port of New Orleans, LLC; the Board of Commissioners for the Port of New Orleans, LLC; Union Carbide Corporation; Wilson Trailer Company; and ZF Active Safety US Inc. Plaintiffs have agreed to voluntarily dismiss claims against Union Carbide Corporation, the Port of New Orleans, LLC, and the Board of Commissioners for the Port of New Orleans, LLC. Rec. Doc. 1 at 7, 22.

[6] Rec. Doc. 1-2 at 6.

[7] *Id.* at 7.

[8] *Id.* at 1–4.

[9] *See generally* Rec. Doc. 1-2.

[10] *Brindell v. Carlisle Indus. Brake & Friction Inc.*, 20-cv-1075, Rec. Doc. 1.

[11] *Id.* at 4. Although Port of Orleans, LLC and The Board of Commissions for the Port of Orleans were non-diverse defendants when the case was removed, "Plaintiffs do not dispute that they have agreed to voluntarily dismiss these defendants." Rec. Doc. 1 at 7.

citizenship should be disregarded because each non-diverse defendant was improperly joined in order to defeat diversity jurisdiction in federal court.[12]

On May 1, 2020, Plaintiffs filed a motion to remand, arguing that the four non-diverse defendants were not improperly joined to defeat diversity jurisdiction.[13] On June 9, 2020, the Court granted the motion and remanded the case to state court.[14] The Court found that the non-diverse defendants were not improperly joined because Plaintiffs had adequately stated strict liability and negligence claims against each non-diverse defendant.[15] Therefore, the Court held that remand was appropriate.[16]

The Court noted that although it need not conduct a summary inquiry, such an inquiry only "substantiates why remand is appropriate in this case."[17] The Court pointed to the affidavit of Raymond Kain ("Mr. Kain") as an example of summary-judgment type evidence that "create[d] a disputed issue of fact" as to whether Taylor and Eagle exposed Decedent to asbestos.[18] In the affidavit, Mr. Kain asserted that he worked with Decedent at PRMM.[19] According to Mr. Kain's affidavit, he and Decedent were "present and exposed to asbestos from maintenance work and

---

[12] *Id.* at 6.

[13] *Brindell v. Carlisle Indus. Brake & Friction Inc.*, 20-cv-1075, Rec. Doc. 12.

[14] *Brindell v. Carlisle Indus. Brake & Friction Inc.*, No. CV 20-1075, 2020 WL 3056398, at *7 (E.D. La. June 9, 2020) (Brown, C.J.).

[15] *Id.* at *5.

[16] *Id.*

[17] *Id.* at *6.

[18] *Id.*

[19] Rec. Doc. 1-2 at 260.

insulation repair work performed by a variety of contractors" including Eagle and Taylor.[20] Mr. Kain attested that they "saw airborne asbestos dust from the work of Eagle and Taylor," during their employment.[21] According to the affidavit, Mr. Kain "was able to identify [Eagle and Taylor] by their trucks, uniforms, and equipment."[22] Thus, even after a summary inquiry, the Court held that the non-diverse defendants were not improperly joined and there was not diversity jurisdiction over the action.[23] However, the Court's June 9, 2020 Order specifically states that "even if the Court did not consider Kain's declaration, the Court's conclusion would not differ" because Utility had not presented evidence that would negate the possibility of recovery against the non-diverse defendants.[24]

On February 2, 2021, Removing Defendants removed the case to this Court for a second time, again asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[25] In the notice of removal, Removing Defendants again concede that four defendants—Taylor, Eagle, First State, and Fidelity—are Louisiana citizens and are therefore not diverse from Plaintiffs.[26] However, Removing Defendants again assert that each non-diverse defendant's citizenship should be disregarded because each non-diverse defendant was improperly joined in order to defeat federal jurisdiction.[27] Removing Defendants argue that the Court's June 9, 2020 Order relied on the

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Brindell*, 2020 WL 3056398, at *6.

[24] *Id.* at *6 n. 100.

[25] Rec. Doc. 1.

[26] *Id.* at 3.

[27] *Id.* at 5.

affidavit of Mr. Kain, an affidavit which Removing Defendants now assert was "procured and executed in bad faith in order to avoid a proper removal."[28] Removing this affidavit from consideration, Defendants claim, makes clear that the non-diverse parties were improperly joined and that the Court therefore has jurisdiction over this case.[29] Removing Defendants further assert that the notice of removal was timely for two reasons.[30] First, they claim that although the notice of removal was filed over a year after the case was originally filed in state court, it was nevertheless timely because Plaintiffs acted in bad faith to prevent removal.[31] Second, they assert that it was timely because it was filed within 30 days of Defendants' receipt of "other paper," namely, a transcript of Mr. Kain's deposition on January 29, 2021.[32]

On February 5, 2021, Plaintiffs filed the instant "Emergency Motion to Remand."[33] On February 11, 2021, Removing Defendants filed an opposition.[34] On February 17, 2021, the Court held oral argument on the motion via videoconference.[35] Also on February 17, 2021, with leave of Court, Plaintiffs filed a reply in further support of the motion to remand.[36]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion to Remand*

---

[28] *Id.* at 4.

[29] *Id.*

[30] *Id.* at 16.

[31] *Id.*

[32] *Id.*

[33] Rec. Doc. 5.

[34] Rec. Doc. 8.

[35] Rec. Doc. 16.

[36] Rec. Doc. 25.

Plaintiffs raise three issues in the instant motion.[37] Plaintiffs assert that removal in the instant case is "procedurally barred both on timing grounds and by [Removing Defendants'] failure to have obtained the consent of all Defendants," as well as "substantively barred by this Court's June 9, 2020 Order which soundly rejected Defendants' claims of improper joinder."[38]

First, Plaintiffs argue that Removing Defendants failed to obtain the consent of the non-diverse defendants prior to removal.[39] Because this Court determined in its June 9, 2020 Order "that Eagle and Taylor are properly joined Defendants," Plaintiffs contend that "their consent is required under 28 U.S.C. § 1446(b)" prior to removal.[40]

Second, Plaintiffs allege that the notice of removal was untimely filed.[41] Plaintiffs argue that Mr. Kain's deposition on January 29, 2021 did not re-start the thirty-day deadline for removal.[42] Instead, Plaintiffs contend that removal was proper only within thirty days of the *first* time that Defendants ascertained grounds for removal which was in April 2020 after the deposition of Keith Poleto, another of Decedent's former co-workers.[43] Therefore, Plaintiffs argue that Removing Defendants' current attempt to remove the suit to this Court is untimely.[44]

Third, Plaintiffs contend that Mr. Kain's affidavit was not procured in bad faith to avoid

---

[37] Rec. Doc. 5-1.

[38] *Id.* at 5.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at 6.

[43] *Id.*

[44] *Id.* at 7.

removal.[45] Regardless, Plaintiffs assert that this Court made "resoundingly clear" that its June 9, 2020 Order did not rely on Mr. Kain's affidavit.[46] Therefore, Plaintiffs argue that this Court should once again remand this case to state court.[47]

## B.   *Removing Defendants' Arguments in Opposition to the Motion to Remand*

Removing Defendants first argue that the four non-diverse defendants—Taylor, Eagle, First State, and Fidelity—were improperly joined because Plaintiffs have no reasonable basis for recovery against the non-diverse parties.[48] In addition to the arguments already made in opposition to the first motion to remand, Removing Defendants claim that Plaintiffs have not engaged in discovery with the non-diverse defendants and that Mr. Kain's recent deposition contradicted the information originally provided in his affidavit, making clear that Plaintiffs do not have legitimate claims against the non-diverse defendants.[49] Removing Defendants contend that Mr. Kain's deposition testimony proves that Mr. Kain "simply has no personal knowledge of any work done by either Eagle or [Taylor] involving an asbestos containing product in the vicinity" of Decedent and therefore, "demonstrates anew, as new paper . . . that the non-diverse defendants were improperly joined."[50]

Removing Defendants further argue that removal is timely because Plaintiffs acted in bad faith to prevent removal.[51] Removing Defendants allege that Plaintiffs have pursued claims against

---

[45] *Id.*

[46] *Id.* at 7–8.

[47] *Id.*

[48] Rec. Doc. 8 at 8.

[49] *Id.*

[50] *Id.* at 13.

[51] *Id.*

the non-diverse defendants "half-heartedly" by failing to propound discovery to Eagle, Taylor, First State, or Fidelity, and failing to depose their corporate representatives.[52] Removing Defendants allege that Plaintiffs purposely waited until after the one year deadline for removal had passed before exchanging discovery and providing their expert reports, which Removing Defendants assert clearly show that Plaintiffs have no claim against the non-diverse defendants.[53]

Finally, Removing Defendants argue that Plaintiffs' counsel have a pattern of using similar tactics in other cases to prevent removal.[54] Removing Defendants contend that Plaintiffs' counsel have brought claims against Taylor in bad faith in other cases for the sole purpose of preventing federal jurisdiction.[55]

## C.   Plaintiffs' Arguments in Further Support of the Motion to Remand

In reply, Plaintiffs assert that Removing Defendants cannot meet the high burden required for a showing of improper joinder.[56] Plaintiffs claim that "[t]his Court has already considered this question, in this case" and found that Plaintiffs have adequately asserted negligence and strict liability claims against the non-diverse defendants.[57] Moreover, Plaintiffs contend that this Court, in undertaking a summary inquiry in its June 9, 2020 Order, "emphasized that it need not consider Mr. Kain's affidavit" in finding that Removing Defendants had "failed to negate a possibility of the non-diverse defendant[s]' liability."[58]

---

[52] Id. at 15–16.

[53] Id. at 16.

[54] Id.

[55] Id. at 16–17.

[56] Rec. Doc. 25 at 1.

[57] Id. at 2.

[58] Id.

Plaintiffs claim that Removing Defendants' argument surrounding inconsistencies between Mr. Kain's affidavit and his later deposition testimony "reveals that Removing Defendants have mischaracterized the record."[59] Plaintiffs allege that Removing Defendants "cherry-picked" statements made by Mr. Kain during his deposition while "entirely ignor[ing] Mr. Kain's later testimony confirming . . . the basis for the statements in his affidavit."[60]

Finally, Plaintiffs contend that Removing Defendants' statements regarding Plaintiffs' failure to engage in discovery with the non-diverse defendants is false.[61] Plaintiffs claim that they engaged in discovery with Eagle, have submitted expert witness reports, and have interacted with the non-diverse defendants during depositions.[62]

## III. Legal Standard

### A.    Legal Standard for Removal

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[63] Remand to state court is appropriate if the federal court lacks subject matter jurisdiction.[64] A federal court has subject matter jurisdiction over an action pursuant to 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[65] Any "doubts regarding whether removal

---

[59] *Id.* at 3.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 4–5.

[63] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[64] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

[65] 28 U.S.C. § 1332(a)(1).

jurisdiction is proper should be resolved against federal jurisdiction."[66]

**B.      Timeliness of the Notice of Removal**

Generally, a notice of removal must be filed within 30 days of the receipt of a copy of the initial pleading by the defendant.[67] However, if the case is not originally removable, but it later becomes removable, the defendant must remove the case within 30 days of notice that the case has become removable.[68] Nevertheless, even if a defendant receives such notice that a case has become removable after the initial pleading, if it has been more than 1 year since the commencement of the action, the case may not be removed "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."[69] The Fifth Circuit applies this "bad faith" exception when a party has "attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights."[70]

**C.      Improper or "Fraudulent" Joinder[71]**

In this case, the parties do not dispute that Taylor, Eagle, First State, and Fidelity are citizens of Louisiana, and that their presence in this suit destroys diversity. Despite the presence of non-diverse defendants in this lawsuit, Removing Defendants argue that removal is proper because Plaintiffs have fraudulently joined the non-diverse defendants in order to avoid federal

---

[66] *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (internal citation omitted).

[67] 28 U.S.C. § 1446(b)(1).

[68] 28 U.S.C. § 1446(b)(3).

[69] 28 U.S.C. § 1446(c)(1).

[70] *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426 (5th Cir. 2003).

[71] The Fifth Circuit refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

jurisdiction over this suit.

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[72] The party asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[73] The Fifth Circuit has long recognized two methods of improper joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[74] In this case, Removing Defendants allege that Taylor, Eagle, First State, and Fidelity are improperly joined because Plaintiffs cannot plead a cause of action against them.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[75] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[76] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[77] Second, in rare cases, if

---

[72] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

[73] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[74] *Crockett*, 436 F.3d at 532 (internal citations omitted).

[75] *Smallwood*, 385 F.3d at 573.

[76] *Id.*

[77] *Id.*

"a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder" the district court "may, in its discretion, pierce the pleadings and conduct a summary inquiry."[78]

If a court decides to "pierce the pleadings" when assessing a claim of improper joinder, it may "consider summary-judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[79] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[80] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[81]

The Fifth Circuit has stated that district courts should look at summary-judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[82] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[83]

---

[78] *Id.*

[79] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

[80] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[81] *Travis*, 326 F.3d at 650.

[82] *Smallwood*, 385 F.3d at 573.

[83] *Id.*

## IV. Analysis

Plaintiffs argue that remand is appropriate because the notice of removal was not timely filed and because Removing Defendants cannot meet their heavy burden of establishing that the non-diverse defendants were improperly joined. In response, Removing Defendants assert that this Court has jurisdiction over this matter because the non-diverse defendants were improperly joined. Removing Defendants also contend that removal was timely because Plaintiffs engaged in bad faith to prevent removal and because the notice of removal was filed within 30 days of Mr. Kain's January 29, 2021 deposition, at which time Removing Defendants assert that they received new information that made them aware that the case was removable. The Court addresses each of these issues in turn.

### A.    Whether the Notice of Removal was Timely

Plaintiffs asserts that Removing Defendants are precluded from removing this case because Removing Defendants failed to remove the action within 30 days of the case becoming removable or within 1 year of the case being filed in state court.[84] Plaintiffs contend that they did not act in bad faith to prevent removal and note that they continue to pursue their claims against the non-diverse defendants.[85]

In opposition, Removing Defendants assert that they removed the case within 30 days of Mr. Kain's January 29, 2021 deposition, when they allege they obtained new evidence suggesting that the case was removable.[86] Moreover, Removing Defendant argue that removal is appropriate despite the case having been filed in state court more than one year ago because Plaintiffs acted in

---

[84] Rec. Doc. 5-1 at 5; Rec. Doc. 25 at 6.

[85] Rec. Doc. 25 at 6.

[86] Rec. Doc. 8 at 6.

bad faith by keeping the non-diverse parties in this case in order to prevent removal.[87] Specifically, Removing Defendants contend that this bad faith is evidenced by: (i) the inconsistencies between Mr. Kain's affidavit and deposition testimony, inconsistences that Removing Defendants allege Plaintiffs knew about before submitting Mr. Kain's "confect[ed] affidavit" to this Court in support of the first motion to remand and (ii) Plaintiffs' failure to develop any of the claims against the non-diverse defendants.[88]

Considering that Removing Defendants removed the case more than one year after it was initially filed in state court, Removing Defendants must show that Plaintiffs acted in bad faith to prevent removal.[89] "In determining whether a plaintiff has acted in bad faith to prevent removal, the question is what motivated the plaintiff in the past—that is, whether the plaintiff's litigation conduct was meant to prevent a defendant from removing the action."[90] Analyzing each of Removing Defendants' bad faith arguments in turn, Removing Defendants have not shown that Plaintiffs acted in bad faith to prevent removal.

First, Removing Defendants argue that Plaintiffs' bad faith is evidenced by contradictions between Mr. Kain's January 29, 2021 deposition testimony and the affidavit of Mr. Kain that Plaintiffs previously submitted to this Court in support of the first motion to remand.[91] Removing Defendants assert that the inconsistencies between the affidavit and deposition testimony prove that Mr. Kain's "testimony cannot support the claims against the non-diverse defendants, as he

---

[87] *Id.* at 15–16.

[88] *Id.*

[89] 28 U.S.C. § 1446(c)(1).

[90] *Slann v. Eagle, Inc.*, No. CV 20-3347, 2021 WL 389500, at *1 (E.D. La. Feb. 4, 2021) (Milazzo, J.).

[91] Rec. Doc. 8 at 9.

cannot describe any work either Eagle or Taylor-Seidenbach did in [Decedent]'s vicinity."[92] Because Plaintiffs' counsel spoke to Mr. Kain "in April 2020 in order to confect the 'affidavit'" Removing Defendants argue that Plaintiffs' counsel knew, or should have known, that Mr. Kain's testimony would not support their claims against the non-diverse defendants.[93] Removing Defendants go so far as to suggest that "Plaintiffs likely suborned perjury by submitting the affidavit to this Court."[94]

The Court does not take these allegations lightly. Accusations of perjury are serious and should not be wielded without evidentiary support. The fatal flaw in Removing Defendants' argument is that they have failed to prove its premise—namely, Removing Defendants have not shown that Mr. Kain's affidavit was false or that it was not based on personal knowledge.

Plaintiffs presented Mr. Kain's affidavit to this Court as an exhibit to the first motion to remand and as support for their argument that Eagle and Taylor were not improperly joined. Specifically, Plaintiffs presented the affidavit to show that Taylor and Eagle may have exposed Decedent to asbestos when he worked for PRMM. In the affidavit, Mr. Kain asserted that he worked with Decedent at PRMM.[95] According to Mr. Kain's affidavit, he and Decedent were both "present and exposed to asbestos from maintenance work and insulation repair work performed by a variety of contractors" including Eagle and Taylor.[96] Mr. Kain asserts that they "saw airborne

---

[92] *Id.* at 15.

[93] *Id.*

[94] *Id.* at 9.

[95] Rec. Doc. 1-2 at 260.

[96] *Id.*

asbestos dust from the work of Eagle and Taylor" during their employment.[97] Mr. Kain states that he "was able to identify [Eagle and Taylor] by their trucks, uniforms, and equipment."[98]

During his deposition on January 29, 2021, Mr. Kain did not recant his affidavit. Instead, he affirmed that the affidavit was accurate and made to the best of his personal knowledge.[99] His testimony confirmed many of the statements made in his affidavit, and provided further support for Plaintiffs' claims that the non-diverse defendants may have exposed Decedent to asbestos. For example, Mr. Kain testified that he believes he saw trucks with Eagle's logo while working on ships owned by PRMM.[100] He testified that he saw Eagle employees working in the holds of the ship.[101] He testified that he recalled seeing Taylor "performing maintenance work and/or insulation repair work onboard these same ships at the Port of New Orleans."[102] He testified that he saw some sort of dust come from the areas where Eagle and Taylor employees worked.[103] He testified that he knew that Decedent checked on steam lines that were "wrapped with insulation."[104] Overall, Mr. Kain's testimony does not, as Removing Defendants argue, contradict his affidavit.

Removing Defendants point to several statements made by Mr. Kain during his deposition

---

[97] *Id.*

[98] *Id.*

[99] *See, e.g.*, Rec. Doc. 1-2 at 206 (answering "Yes, as far as I'm concerned" when asked if the affidavit was accurate and answering "Exactly" when asked if the affidavit was based on his personal knowledge); *Id.* at 252 (testifying that he was "giving the best of [his] knowledge" when he signed the affidavit).

[100] *Id.* at 212.

[101] *Id.* at 218.

[102] *Id.* at 206.

[103] *Id.* at 218.

[104] *Id.*

that they argue prove that Mr. Kain's affidavit was false or made in bad faith.[105] For example, Removing Defendants note that Mr. Kain testified that he "had no idea what asbestos was," and was only "pretty sure" that Eagle employees were working on the ships.[106] While these statements may affect the weight given to Mr. Kain's testimony, they do not prove that Mr. Kain's affidavit was false or made in bad faith. Mr. Kain's deposition testimony comes more than forty years after the alleged asbestos exposure at issue in this case—this lapse of time may mean that Mr. Kain does not remember everything that happened while working with Decedent. The fact that Defendants may be able to pull out discrepancies in Mr. Kain's testimony through cross-examination does not discredit the entirety of Mr. Kain's affidavit or memory. Mr. Kain's deposition testimony, therefore, provides no basis for this Court to find that Plaintiffs acted in bad faith by presenting the affidavit to the Court or by maintaining their claims against the non-diverse defendants.

Even recognizing the discrepancies between Mr. Kain's affidavit and his deposition testimony, Removing Defendants have not proven that Plaintiffs' counsel were aware of these inconsistencies when they originally filed the affidavit in support of the first motion to remand. Removing Defendants claim that Plaintiffs "confect[ed]" Mr. Kain's affidavit and claim that "Plaintiffs' counsel has known—or at least should have known—for over eight months that Kain's testimony would be lacking."[107] Removing Defendants even go as far as to allege that "Plaintiffs likely suborned perjury by submitting the affidavit to this Court."[108] Yet, despite making such

---

[105] Rec. Doc. 8 at 10–13.

[106] *Id.* at 6–10.

[107] *Id.* at 13–15.

[108] *Id.* at 9.

serious allegations, Removing Defendants provide no evidence in support of their claims.[109] Removing Defendants have not proven that Mr. Kain's affidavit was based on anything but his own knowledge, that Plaintiffs knew that Mr. Kain's affidavit was false or exaggerated, or that Plaintiffs presented a false affidavit to circumvent federal jurisdiction.

Further, while Removing Defendants assert that "[p]rior to [the first] removal, Plaintiffs had neither listed Kain as a witness nor noticed his deposition,"[110] Removing Defendants have failed to explain why *they* did not depose Mr. Kain earlier. Mr. Kain was known to the Defendants since at least April 29, 2020, when Plaintiffs submitted his affidavit to this Court in support of the first motion to remand.[111] There was nothing preventing Removing Defendants from deposing Mr. Kain themselves prior to the one-year deadline for removal—they simply chose not to do so.

In addition to their arguments surrounding Mr. Kain's affidavit, Removing Defendants point to Plaintiffs' alleged failure to develop any of the claims against the non-diverse defendants as further evidence of bad faith.[112] Removing Defendants assert that Plaintiffs waited until after the one-year deadline for removal before: (1) "direct[ing] any discovery to the non-diverse [d]efendants"; (2) serving expert reports "which made clear that [Taylor] and Eagle were not actual targets for Plaintiffs' claims"; and (3) "noticing the deposition of the one witness Plaintiffs stated would make their case against both Eagle and [Taylor]," Mr. Kain.[113] Removing Defendants also argue that Plaintiffs' expert reports show that Plaintiffs do not plan to pursue claims against the

---

[109] *Id.* at 13–15.

[110] *Id.* at 14.

[111] Rec. Doc. 1-2 at 260.

[112] Rec. Doc. 8 at 15–16.

[113] *Id.* at 16.

non-diverse defendants.[114]

Again, Removing Defendants have not met their burden of showing that Plaintiffs acted in bad faith to prevent removal by maintaining their claims against the non-diverse defendants. For example, despite Removing Defendants' claims to the contrary,[115] Plaintiffs' expert reports support Plaintiffs' assertion that they *are* actively pursuing their claims against the non-diverse defendants. Dr. Richard Cohen's opinion clearly states:

> Based on the information available to me and that I have reviewed in this case, [Decedent] had significant and meaningful exposures to asbestos from his work with and around asbestos containing products including brakes, **insulation**, and the associated dust and debris. It is my opinion to a reasonable degree of medical certainty that [Decedent] had a malignant mesothelioma that was caused by these identified exposures to asbestos. His asbestos exposure was the direct and sole cause of his mesothelioma.[116]

Likewise, Dr. Marty Kanarek's report notes that Decedent was "exposed to asbestos from insulation on ships," and he opines that "[a]ll types of asbestos are known to cause mesothelioma and there is no known safe level of exposure and all doses are cumulative in increasing the risk of mesothelioma."[117] Finally, Dr. Brent Staggs' report notes that Decedent "was present and exposed to asbestos from maintenance work and insulation repair work performed on the ships by a variety of contractors, including Eagle and [Taylor]."[118] Dr. Stagg opines:

> [Decedent] had significant exposures to asbestos from his frequent and proximate work with and around asbestos containing products, over his working lifetime. It is my opinion to a reasonable degree of medical certainty that [Decedent] has a malignant mesothelioma and pleural plaques that were caused by these identified

---

[114] *Id.* at 15.

[115] *Id.*

[116] Rec. Doc. 8-1 at 6 (emphasis added).

[117] Rec. Doc. 1-2 at 427.

[118] Rec. Doc. 8-1 at 34.

and substantial exposures to asbestos.[119]

Each of these reports supports Plaintiffs assertion that they are diligently pursuing their claims against the non-diverse defendants, who they allege contributed to Decedent's injury by exposing him to asbestos dust found in insulation.

Therefore, because Removing Defendants have not shown that Plaintiffs provided a false affidavit to circumvent federal jurisdiction nor that Plaintiffs failed to pursue their claims against the non-diverse defendants, Removing Defendants have failed to provide evidence that Plaintiffs acted in bad faith to prevent removal. Accordingly, the notice of removal—filed more than 16 months after this case was originally filed in state court—was untimely and remand is appropriate on this basis .

**B.      *Whether the Non-Diverse Defendants Were Improperly Joined***

The parties in this case lack complete diversity of citizenship because Plaintiffs and four defendants—Taylor, Eagle, First State, and Fidelity—are Louisiana citizens.[120] Nonetheless, Removing Defendants contend that the Court has diversity jurisdiction over this matter because Plaintiffs improperly joined the four non-diverse defendants.[121]

In the June 9, 2020 Order, the Court addressed the issue of whether the non-diverse defendants were improperly joined.[122] The Court held that the non-diverse parties were not improperly joined and remand was therefore appropriate under the traditional Rule 12(b)(6)-type analysis finding that "Plaintiffs had explicitly raised strict liability and negligence claims against

---

[119] *Id.*

[120] Rec. Doc. 1 at 3.

[121] *Id.* at 5.

[122] *Brindell,* 2020 WL 3056398, at *6.

Taylor and Eagle for manufacturing, selling, distributing, and/or supplying asbestos-containing materials where Decedent was allegedly exposed to asbestos."[123] The Court declines to revisit this issue.

The Court further found that, even under a summary inquiry analysis, the non-diverse defendants were not improperly joined.[124] While the Court did note in the June 9, 2020 Order that it had considered Mr. Kain's affidavit in finding that the non-diverse parties were properly joined, the Court's Order specifically states that "even if the Court did not consider Kain's declaration, the Court's conclusion would not differ" because Utility had not presented evidence that would negate the possibility of recovery against the non-diverse defendants.[125] Additionally, the Court has determined in Section A above that Mr. Kain's affidavit was not fraudulent. Accordingly, the Court also declines to revisit the issue of Mr. Kain's affidavit as it relates to improper joinder.

Removing Defendants now argue that this Court should "pierce the pleadings" and conduct a summary inquiry because they allege it is clear that Plaintiffs have no intention of pursuing claims against the non-diverse defendants.[126] Removing Defendants urge this Court to consider evidence of the discovery process thus far and review Plaintiffs' expert reports as proof that Plaintiffs "have no reasonable basis to recover" against the non-diverse defendants and therefore, the non-diverse defendants were improperly joined.[127] Specifically, Removing Defendants allege

---

[123] *Id.* at *5 (citing *Lucas v. Hopeman Bros.*, 2010-1037 (La. App. 4 Cir. 2/16/11), 60 So. 3d 690, 699 ("To prevail in an asbestos case, the plaintiffs must show, by a preponderance of the evidence, that the decedent was exposed to asbestos from the defendant's product, 'and that he received an injury that was substantially caused by that exposure.'")).

[124] *Id.* at *6.

[125] *Id.* at *6 n. 100.

[126] Rec. Doc. 8 at 8.

[127] *Id.* at 8–13.

both that Plaintiffs have "wholly failed to take any steps to develop any evidence against the non-diverse defendants," and that "none of Plaintiffs' retained experts opine that the non-diverse [d]efendants caused or contributed to Decedent's disease or death."[128] During oral argument, Removing Defendants cited *Michel v. Ford Motor Company*[129] and *Smith v. Union Carbide*[130] to support these arguments.

When conducting a summary inquiry, the Court determines only whether the plaintiff may possibly recover against a non-diverse defendant[131] and resolves all "contested issues of fact" in the plaintiff's favor.[132] A court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[133] Despite Removing Defendants' argument to the contrary, Plaintiffs' expert reports provide support for Plaintiffs' assertion that they *are* actively pursuing their claims, and have a possibility of recovering, against the non-diverse defendants. For example, Dr. Richard Cohen's opinion clearly states:

> Based on the information available to me and that I have reviewed in this case, [Decedent] had significant and meaningful exposures to asbestos from his work with and around asbestos containing products including brakes, **insulation**, and the associated dust and debris. It is my opinion to a reasonable degree of medical certainty that [Decedent] had a malignant mesothelioma that was caused by these identified exposures to asbestos. His asbestos exposure was the direct and sole cause of his mesothelioma.[134]

---

[128] Rec. Doc. 8 at 3.

[129] 2018 WL 4091048 (E.D. La. Aug. 8, 2018) (Vance, J.).

[130] 2013 WL 6244199 (E.D. La. Dec. 3, 2013) (Barbier, J.).

[131] *See Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018).

[132] *Travis*, 326 F.3d at 648–49.

[133] *Guillory*, 434 F.3d at 308–09.

[134] Rec. Doc. 8-1 at 6 (emphasis added).

Likewise, Dr. Marty Kanarek's report notes that Decedent was "exposed to asbestos from insulation on ships," and he opines that "[a]ll types of asbestos are known to cause mesothelioma and there is no known safe level of exposure and all doses are cumulative in increasing the risk of mesothelioma."[135] Finally, Dr. Brent Staggs' report notes that Decedent "was present and exposed to asbestos from maintenance work and insulation repair work performed on the ships by a variety of contractors, including Eagle and [Taylor]."[136] Dr. Stagg opines:

> [Decedent] had significant exposures to asbestos from his frequent and proximate work with and around asbestos containing products, over his working lifetime. It is my opinion to a reasonable degree of medical certainty that [Decedent] has a malignant mesothelioma and pleural plaques that were caused by these identified and substantial exposures to asbestos.[137]

Each of these reports supports Plaintiffs assertion that they are diligently pursuing their claims and have a possibility of recovering against the non-diverse defendants, who they allege contributed to Decedent's injury by exposing him to asbestos dust found in insulation.

Removing Defendants' reliance on *Michel v. Ford Motor Company* and *Smith v. Union Carbide* is also misplaced, as both cases are clearly distinguishable from the instant action. In both cases, the plaintiffs brought suit against non-diverse defendants, including Taylor, for alleged asbestos exposure.[138] In both cases, the plaintiffs relied on the same affidavit by a former Taylor employee who "affirm[ed] that he worked in several worksites where asbestos was present and many worksites where Taylor supplied asbestos materials."[139] In each case, the plaintiffs relied on

---

[135] Rec. Doc. 1-2 at 427.

[136] Rec. Doc. 8-1 at 34.

[137] *Id*.

[138] *Michel*, 2018 WL 4091048, at *1; *Smith*, 2013 WL 6244199, at *1.

[139] *Smith*, 2013 WL 6244199, at *1; *see also Michel*, 2018 WL 4091048, at *3 ("Judge Carl Barbier denied a motion to remand in a nearly identical case where the plaintiff relied on the same Corcoran affidavit.").

the affidavit to dispute the defendants' argument that Taylor was improperly joined.[140] In both cases, the presiding district court judges held that this affidavit alone did not give the plaintiffs a "reasonable chance of prevailing" against Taylor and thus Taylor was improperly joined.[141] The plaintiffs in both cases failed to present any evidence showing that Taylor actually exposed the injured party to asbestos.[142]

Here, by contrast, Plaintiffs are not relying on an affidavit submitted by a Taylor or Eagle employee. Instead, Plaintiffs rely on the testimony of Mr. Kain, Decedent's co-worker who had first-hand knowledge of Decedent's possible exposure by the non-diverse defendants. Additionally, Plaintiffs' expert reports clearly show that Plaintiffs are still pursuing claims against the non-diverse parties. Because there is a reasonable basis for predicting that state law would allow Plaintiffs to recover against the non-diverse defendants,[143] there is no improper joinder and remand is appropriate on this basis.[144]

## V. Conclusion

Considering the foregoing reasons, Removing Defendants have not shown that Plaintiffs provided a false affidavit in Plaintiffs' first motion to remand in order to circumvent federal

---

[140] *Michel*, 2018 WL 4091048, at *3; *Smith*, 2013 WL 6244199, at *4.

[141] *Michel*, 2018 WL 4091048, at *3; *Smith*, 2013 WL 6244199, at *5.

[142] *Michel*, 2018 WL 4091048, at *2 ("None of the plaintiffs' experts reference products of the type produced by Taylor-Seidenbach in their testimony"); *Smith*, 2013 WL 6244199, at *4–5.

[143] *Smallwood*, 385 F.3d at 576.

[144] Plaintiffs also argue that the notice of removal is procedurally deficient because Defendants did not obtain the consent of the non-diverse defendants prior to removal as required under 28 U.S.C. § 1446(b). Rec. Doc. 5-1 at 5. The Fifth Circuit has held that consent for removal is not required from an improperly-joined defendant. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Here, however, as discussed above, the Court has found that the non-diverse defendants were properly joined. Therefore, consent from all defendants was required prior to removal. Because Defendants did not obtain consent from the non-diverse defendants, the notice of removal is deficient.

jurisdiction nor that Plaintiffs failed to pursue their claims against the non-diverse defendants after this Court's June 9, 2020 Order remanding this case. Therefore, Removing Defendants have failed to provide evidence that Plaintiffs acted in bad faith to prevent removal or that Plaintiffs did not intend to pursue claims against the non-diverse defendants. Therefore, remand is appropriate. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Carolyn Brindell, John Brindell III, Connie Dupay, and Christopher Brindell's "Emergency Motion to Remand"[145] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this ___23rd___ day of February, 2021.

 

 

 

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[145] Rec. Doc. 5.